**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIE NANETTE LEGGITT ALLEN,

        Plaintiff,

  v.

CENTILLIUM COMMUNICATIONS, INC.,

        Defendant.

                           /

No. C-06-06153  (EDL)

**ORDER GRANTING DEFENDANT'S
SECOND MOTION FOR PARTIAL
SUMMARY JUDGMENT**

     Defendant Centillium Communications, Inc.'s Second Motion for Partial Summary Judgment came on for hearing on May 20, 2008.  Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS Defendant's motion for the following reasons and for the reasons stated at the hearing.

**I.**    **BACKGROUND**

     Plaintiff Julie Allen initiated this lawsuit pro se in Superior Court in Alameda.  Defendant removed it to federal court on September 30, 2006.  Plaintiff subsequently obtained an attorney, who filed an amended complaint on Plaintiff's behalf.  Plaintiff's counsel then withdrew.  Shortly thereafter, the parties stipulated to strike Plaintiff's first amended complaint, and the Court reinstated her original complaint on June 26, 2007.  Plaintiff then filed an "amended first amended complaint for damages and equitable relief" on October 4, 2007.

     Defendant designs and markets semiconductors used in telecommunications.  Centillium hired Ms. Allen on June 15, 1999 as an accountant.  The company agreed to pay her an annual salary of $37,000.  It also granted her the option to purchase 5,000 shares of Centillium's common stock. Jochnowitz Decl. ¶ 5 & Ex. A.  On June 22, 1999, Ms. Allen signed an agreement in which she acknowledged her employment was at-will.  Id., Ex. B.  Her agreement also contained a clause

United States District Court
For the Northern District of California

1   under which she agreed to assign all rights, title, and interest in any and all inventions,

2   developments, concepts, improvements, or trade secrets whether patentable or registrable under

3   copyright or similar laws that she conceived or developed during her period of employment to the

4   company.[1]  Id., Ex. B.  Ms. Allen resigned from Centillium on June 30, 2006.  See February 15,

5   2008 Jochnowitz Decl., Ex. G.

6        Defendant filed its first motion for partial summary judgment on February 15, 2008.  In its

7   motion, Centillium moved for summary judgment on Plaintiff's First, Second, Eleventh, Twelfth,

8   Thirteenth, and Fourteenth claims, which were based on federal and state employment statutes.  The

9   Court granted that motion on April 3, 2008, which dispensed of all of those claims except for the

10  First and Second claims insofar as they were based on the corporate incentive plan.  Defendant now

11  moves for summary judgment with respect to the remaining claims, which are as follows:  (1)

12  Failure to Pay Wages, Overtime and Related Compensation Under California Law (insofar as this

13  cause of action relates to the corporate incentive plan); (2) Failure to Pay Wages, Overtime and

14  Related Compensation Under the Fair Labor Standards Act (insofar as this cause of action relates to

15  the corporate incentive plan); (3) Unpaid Stock Compensation; (4) Breach of Employment Contract

16  and Related Statutory Obligations; (5) Slander and Defamation; (6) Breach of Statutory Duties to

17  Issue Share Certificates; (7) Thievery and Conversion of Professional Certification; (8) Thievery and

18  Conversion of Personal Items; (9) Harassment and Intimidation Based on an Ongoing Blitzkrieg;

19  (10) Violation of Patent Ownership and Other Proprietary Rights; (11) Constructive Termination;

20  and (12) Tortious Discipline and Discharge.

21       Defendant served Plaintiff with its motion and reply papers, but Plaintiff did not file an

22  opposition.  At the hearing, Plaintiff noted that she did not do so because she believed that filing for

23  summary judgment in two parts "fragmented" her filing.  However, filing motions for partial

24  summary judgment is permitted by the rules, was an efficient way of proceeding here, and complied

25  with the dispositive motion cut-off deadline in this case.  In addition, Defendant notified both the

26

27       [1]  The contract contains an exception pursuant to California Labor Code Section 2870 which
    excludes inventions developed entirely in an employee's own time without use of employer equipment,
28  facilities, supplies, or trade secret information unless such inventions relate to using the invention  for
    the employer's business or result from any work performed for the employer.  The contract, however,
    requires the employee to advise the company promptly in writing of any such inventions.

1    Court and Plaintiff of its intent to file an additional motion for partial summary judgment.  Even

2    though Plaintiff did not submit any evidence or argument to substantively oppose the instant motion,

3    the Court has considered all of the evidence and briefing previously submitted by Plaintiff in

4    opposition to Defendant's first motion for partial summary judgment in reaching this decision.

5   **II.**      **DISCUSSION**

6        **A.**     **Legal Standard**

7        Summary judgment shall be granted if "the pleadings, depositions, answers to

8    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

9    genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

10   law."  FRCP 56(c).  Material facts are those which may affect the outcome of the case.  See

11   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

12   genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

13   party.  Id.  "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some

14   significant probative evidence tending to support the complaint."  Smolen v. Deloitte, Haskins &

15   Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must not weigh the

16   evidence or determine the truth of the matter, but only determine whether there is a genuine issue for

17   trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).  The court must view the facts in

18   the light most favorable to the non-moving party and give it the benefit of all reasonable inferences

19   to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

20   (1986).

21        A party seeking summary judgment bears the initial burden of informing the court of the

22   basis for its motion, and of identifying those portions of the pleadings and discovery responses that

23   demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

24   323 (1986).  If the moving party meets its initial burden, the opposing party must then set forth

25   specific facts showing that there is some genuine issue for trial in order to defeat the motion.  See

26   Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

27       **B.**     **Defendant's Second Motion for Partial Summary Judgment**

28           1.     Third Claim for Unpaid Stock Compensation

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1    Plaintiff claims that she was misclassified at the outset of her employment and that she

2    should have received more than 5000 stock options.  See Amended First Amended Complaint

3    ("FAC") ¶22.  Plaintiff's claim fails because the evidence establishes that Centillium fulfilled its

4    contractual obligations.  In its offer letter, Centillium informed her that she would receive an option

5    to purchase 5000 shares of the company's common stock subject to approval by the Board of

6    Directors.  Jochnowitz Decl. ¶ 5, Ex. A.  Her complaint acknowledges that she received "an initial

7    grant of 5000 shares."  FAC ¶ 22.

8    Centillium had no legal obligation to provide her with additional stock options.  The parties

9    were free to contract for compensation and stock options, and there is nothing inequitable about the

10   contract here.  See, e.g., Adobe Sys. v. Stargate Software, Inc., 216 F. Supp. 2d 1051, 1059 (N.D.

11   Cal. 2002) ("Fundamental to any free society is the liberty of its members to formulate contracts in

12   accordance with the terms that they agree and consent to mutually execute. . . .While exceptions are

13   made in the case of unfair or exploitive contracts, or where an inequitable end results as a result of

14   the agreement, commercial parties are generally free to contract as they desire.").  In addition, as

15   stated in this Court's April 3, 2008 Order, she did not raise a triable issue as to whether she obtained

16   a CPA license.  Furthermore, while Plaintiff claims that her CPA certification entitles her to

17   additional stock compensation, she has not presented any evidence which establishes that Centillium

18   contractually obligated itself to pay individuals who obtained a CPA license greater stock

19   compensation.  Summary judgment is appropriate as to this claim.

20          2.      Fourth Claim for Breach of Employment Contract and Related
                   Statutory Obligations; First and Second Claims Relating to Corporate
21                 Incentive Plan

22   Plaintiff's fourth claim alleges that Centillium failed to pay and deliver to Plaintiff severance

23   benefits, cash adjustments due to misclassification of her salary grade, adjustments to her pay based

24   on her CPA classification, overtime compensation, three day's pay due to the Defendant's delay in

25   Plaintiff's exit interview, payment of corporate incentive plan bonuses, issuance of stock

26   compensation due to her, and any and all other compensation due to her.

27   As to severance, Plaintiff alleges in her complaint that the then-CFO of Centillium made her

28   oral promises of certain severance benefits.  Plaintiff has not pointed to any evidence of such an oral

1   promise.  Nor has she submitted any evidence or even alleged that she assumed any obligation in

2   exchange for that promise.  An agreement that is not premised on mutual obligations lacks

3   consideration and is not enforceable.  <u>J. C. Millett Co. v. Park & Tilford Distillers Corp</u>., 123 F.

4   Supp. 484, 493 (N.D. Cal. 1954).

5       Regarding any initial misclassification in her salary grade, the Court already determined that

6   Ms. Allen presented no evidence that she was misclassified at the start of her employment, and that

7   the evidence showed that she was a salaried employee.  <u>See</u> April 3, 2008 Order at 3.

8       As to the corporate incentive plan bonus, which is also included in claim one of the

9   complaint, Centillium withdrew its initial motion for summary judgment on this claim because it

10  mistakenly relied on evidence of a plan not in place at the time of Ms. Allen's resignation in support

11  of that motion.  In this motion, Centillium relies upon the Corporate Incentive Plan in effect at the

12  time of Plaintiff's resignation in June 2006.  The plan states that an employee must be in good

13  standing through the bonus payment date to receive a bonus, and that the bonus payment is normally

14  to be made in mid-August for the evaluation period of January 1 through June 30.  Jochnowitz Decl.,

15  Ex. C.  Plaintiff alleges that following her resignation, a plan bonus was paid to all employees of

16  Centillium who were in good standing as of June 30, 2006, and that Plaintiff was in good standing

17  through that date, but was denied that bonus.  FAC ¶ 14.  However, the evidence shows that Plaintiff

18  was not in good standing in August when the payout was usually made, as she had resigned in June.

19  She has submitted no evidence to show that the bonus payout was given to other employees on June

20  30.  Summary judgment is therefore proper as to this claim.  This reasoning also applies to the extent

21  that corporate incentive plan bonus money is included in her second claim for relief.

22      The remaining portions of Plaintiff's fourth claim fail because they are premised on claims

23  which the Court already dismissed.  The Court already determined that there was no material factual

24  dispute as to whether Plaintiff obtained a CPA license, found Plaintiff to be exempt from state and

25  federal overtime requirements, and found that Defendant was not obligated to pay Plaintiff for the

26  time between her resignation and her attendance at the exit interview.  Her claim for additional stock

27  options fails for the reasons stated above.  Accordingly, summary judgment is proper on these

28  claims.

3.      Fifth Claim for Slander and Defamation

> Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. (Civ. Code, § 44.) In general, leaving aside certain qualifications that are not relevant in this case, a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel. (Civ. Code, § 45; Rest.2d Torts, § 568, subd. (1).) A false and unprivileged oral communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander. (Civ. Code, § 46; Rest.2d Torts, § 568, subd. (2).)

Shively v. Bozanich, 31 Cal. 4th 1230, 1242 (2003).

Plaintiff submitted no evidence of false communications. In her complaint, she alleges that Defendant's employees have slandered her in a variety of fashions, for example by claiming that Plaintiff was fired when she resigned and by denying Plaintiff worked at Centillium. FAC ¶ 30. However, Plaintiff did not seek any discovery or depositions to obtain evidence of such statements. Nor has she produced any such documents. Her complaint indicates that her knowledge of such statements is based upon hearsay, as she states that "upon inquiry" Centillium has slandered her and that other slanderous statements "both orally and reputedly in writing" would be shown in depositions. Moreover, Plaintiff has not identified the speakers of such statements in her complaint. Summary judgment is proper as to this claim.

4.      Sixth Claim for Breach of Statutory Duties to Issue Share Certificates

In her sixth cause of action, Plaintiff requests issuance of stock share certificates. Plaintiff alleges that she has a copy of her original stock certificate showing her grant of 5000 shares issued in 1999. FAC ¶ 34. She claims that 18 other grants of company stock were made to her during her seven years of employment. However, Plaintiff has produced no proof or documentation of such stock grants. Without proof that Plaintiff exercised her stock options, she never became an owner of those shares. Even if Plaintiff had evidence that she was issued certificated shares, her legal remedy would be to file with the Delaware Court of Chancery for issuance of a share certificate, and she would then need to post a bond before a certificate would issue (Centillium is a Delaware corporation). See 8 Del. Code § 168. Summary judgment is therefore appropriate as to this claim.

5.      Seventh Claim for Thievery and Conversion

Plaintiff alleges in her seventh claim that Centillium intercepted the paperwork related to her CPA certification and used it to file fraudulent reports with the Securities and Exchange Corporation (SEC). This claim rests on Plaintiff's assertion that she received a CPA license. This Court already determined that Plaintiff failed to show a material factual dispute on this issue. See April 3, 2008 Order at 5. Moreover, Plaintiff admitted that she has never seen the alleged CPA certificate. See Allen Depo. at 56. Summary judgment is proper.

6.      Eight Claim for Thievery and Conversion of Personal Items

Plaintiff alleges in her eighth claim that employees and agents of Centillium, with Defendant's prior knowledge, vandalized and converted to their own use Plaintiff's personal property, which include her purse, locked cabinet space, automobile, confidential and proprietary work papers, and a thumb drive containing proprietary custom game template design software. FAC ¶ 43. Plaintiff alleges that she "is informed and believes that defendant Centillium directly benefitted from the use and conversion of some of these assets," but submits no evidence in support of this belief.

Under the respondeat superior doctrine, an employer's liability extends only to torts of an employee committed within the scope of his employment, whether willful or negligent. However, if an employee inflicts an injury out of personal malice, not engendered by the employment, the employer is not liable. "The determination as to whether an employee committed a tort during the course of his employment turns on whether 1) the act performed was either required or incident to his duties, or 2) the employee's misconduct could be reasonably foreseen by the employer in any event." Martinez v. Hagopian, 182 Cal. App. 3d 1223, 1227-28 (1986) (internal citations omitted). Here, Plaintiff has offered no basis for her belief that such acts were performed. Nor has she submitted any evidence as to whether the alleged acts were incident to the employees' duties or were foreseeable by the employer. As it was Ms. Allen's burden to rebut Defendant's showing of an

United States District Court
For the Northern District of California

1  absence of material disputed fact in her opposition, summary judgment is proper as to this claim.[2]

2          7.       Ninth Claim for Harassment and Intimidation Based on an Ongoing
3                   Blitzkrieg

4          Plaintiff's ninth claim is based on harassment during her final 18 months of employment,

5  including sexual harassment by Linda Reddick and Linda Berns and sabotage of her work by other

6  employees.  FAC ¶¶ 52-54.  The sexual harassment and age based harassment claims have already

7  been dismissed on summary judgment.

8          Insofar as this claim alleges that other employees intentionally inflicted emotional distress

9  upon her, Plaintiff must show "(1) extreme and outrageous conduct by the defendant with the

10  intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

11  plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of

12  the emotional distress by the defendant's outrageous conduct."  Cervantez v. J. C. Penney Co., 24

13  Cal. 3d 579, 593 (1979).  The conduct must be so extreme as to "exceed all bounds that are usually

14  tolerated in a civilized community."  Id.

15          The alleged acts by Berns and Reddick – loudly threatening to write Plaintiff up, borrowing

16  financial paperwork and other documentation from Plaintiff's workstation, loudly discussing an

17  audit in a hostile manner, giving Plaintiff short notice for a work assignment, and claiming credit for

18  Allen's work – do not meet that standard.  See Allen Depo. at 103-104; 116-128.  Other than Berns

19  and Reddick, no one else harassed Plaintiff directly.  Id. at 137.  As for Plaintiff's claims of other

20  people cutting off her file access or altering files on the server, Plaintiff did not offer any specific

21  evidence as to who conducted such activities and whether they intended to cause her emotional

22  distress.

23          She also alleges that there were "threats to her safety" based on an incident during which Ms.

24  Allen alleges she showed up to a scheduled Saturday meeting, but her co-workers were all 30 to 45

25  minutes late, and her safety was threatened because the building was empty and the door was open

26  when she arrived at work.  Id. at 139-141.  Plaintiff did not stay for the meeting.  There is no

27

28          [2]  As to Plaintiff's belief that some of these items remain with Centillium, the record contains no evidence to support these allegations, as she has conducted no discovery and submitted no evidence in support of such allegations.

1  evidence in the record that anybody at Centillium left the door open intentionally to scare Plaintiff

2  when she arrived for the meeting.  Summary judgment is proper as to this claim.

3          8.      Tenth Claim for Violation of Patent Ownership and Other Proprietary
                   Rights

4

5          In her tenth claim, Plaintiff contends that Defendant violated her intellectual property rights.

6  She claims that she came up with new techniques for payroll and networking processes, and that

7  Centillium misappropriated these processes by filing patent applications.  FAC ¶¶ 59-62.

8          Her patent claim fails because she assigned her right in any invention she developed or

9  conceived during her employment to the company.  See Jochnowitz Decl., Ex. B.  She conceded that

10  the ideas and processes in question were developed during the course and in the scope of her

11  employment, so the exception in the contract discussed above does not apply.  See Allen Depo. at

12  183-192.

13          In addition, she cannot sue for patent infringement, because she does not have an issued

14  patent in her name.  Allen Depo. at 188-189.  Nor is there evidence that she owns a valid copyright

15  and can sue for copyright infringement.  Twentieth Century Fox Film Corp. v. Entm't Distrib., 429

16  F.3d 869, 876 (9th Cir. 2005).  To the extent that she is claiming trade secret misappropriation, she

17  shared any processes she developed with Centillium, since she developed those methodologies on

18  the job and for the job.  She agreed that Centillium could use the spreadsheets and formulas she

19  developed.  Allen Depo. at 187.

20          Finally, Plaintiff does not remember who told her that Centillium filed for 18 patents on

21  processes that she invented.  Id. at 181-82.  She submitted no evidence regarding any patent filings

22  or what was done with her inventions.  Id. at 181, 187.  It is undisputed that Centillium did not file

23  for patents on anything Ms. Allen invented.  Jochnowitz Decl. ¶ 8.  Summary judgment is proper as

24  to this claim.

25          9.      Fifteenth Claim for Constructive Termination

26          Plaintiff claims that Centillium constructively discharged her from her employment.  To

27  prevail on a claim of constructive discharge, the employee must prove that the discharge breached

28  an expressed or implied contract, or violated a statutory or constitutional requirement or public

1   policy.  Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251-52 (1994).  Here, there is no

2   contractual provision Plaintiff points to that Centillium violated; to the contrary, Plaintiff was an at-

3   will employee.  Nor was she forced to resign for any reason that violated a statute or contravened

4   public policy.  Her claim appears to be based on her claims of harassment by other employees, but

5   the Court has already found that there are no material facts in dispute to support such claims.

6   Therefore, summary judgment is proper as to this claim.

7          10.     Sixteenth Claim for Tortious Discipline and Discharge

8          To establish wrongful discharge in violation of public policy in California requires showing:

9   1) that the public policy at issue is fundamental and "is clearly established in the Constitution and

10  positive law of the state"; and 2) "the policy subserved by the employee's conduct must be a truly

11  public one."  General Dynamics Corp. v. Superior Court, 7 Cal. 4th 1164, 1180 (1994).  To the

12  extent that Plaintiff's claim is based on her other claims, as described above and in this Court's

13  previous order, she has failed to raise a triable issue on these claims.  She also appears to be alleging

14  that she was retaliated against for asserting her rights under various statutes.  However, she filed

15  complaints of discrimination under the Fair Employment and Housing Act in October 2006, which

16  was after she resigned.  This protected activity, therefore, could not have possibly caused her alleged

17  discharge.  Summary judgment is proper as to this claim.

18  **III.    CONCLUSION**

19         In accordance with the foregoing, Defendant's Second Motion for Partial Summary

20  Judgment is GRANTED.  This order terminates the case and any pending motions, including

21  Defendant's motion to compel the deposition of Plaintiff.  The clerk shall close the file.

22         **IT IS SO ORDERED.**

23  Dated: May 22, 2008

                                                    _____
24                                                  ELIZABETH D. LAPORTE
                                                    United States Magistrate Judge

25

26

27

28